Bradley, J.
The dimension in width of the right of way, given by the deed of the warehouse lot, was not defined by ,the terms of the conveyance otherwise than in the expressed purpose for which it was granted. The intention was to give the means of access from the highway to the warehouse for the purposes of the business there. And this was understood to require passage-way for teams to go to and from the warehouse, in drawing grain and fruit to it and returning to the highway.
The plaintiff, under this grant, was entitled to such a way, at the place designated, as was necessary for its proper and reasonable enjoyment. Maxwell v. McAtee, 9 B. Monroe, 20; S. C., 48 Am. Dec., 409; Rexford v. Marquis, 7 Lansing, 249; Farrington v. Bundy, 5 Hun, 617; Bakeman v. Talbot, 31 N. Y., 366.
The gravel road made by the plaintiff and Catchpole, from the highway to the warehouse before the conveyance of the lot to them, was upon the fifteen feet strip after-wards conveyed to the plaintiff, and there is some evidence tending to prove that the gravel was extended over a portion of the place occupied by the cellar dug by the defendant, about which there is some question upon the evidence. The way, by the deed, was located adjacent to and north of the north line of the warehouse lot. This fifteen feet strip was situated there, and the distance between the north line of the warehouse lot and the cellar wall is seventeen feet. The question at the trial was whether that was a reasonably suitable width for the passage, or such width as was within the contemplation of the parties to the grant at the time it was made. Much evidence was given upon the subject, embracing also the situation, and *127 the character and extent of the business done there. The warehouse is about eighty feet from the highway, and the west end of the defendant’s foundation wall is a short distance west of the east line of the warehouse. The distance between them is twenty-one feet, and between the north line of the warehouse lot and the cellar wall, seventeen feet. The grain drawn there is taken to the north side of the warehouse and there unloaded. And it is claimed that when the wagons are unloaded thirty feet in width is required to turn the teams and wagons around, and that they cannot at the warehouse turn and go back into the highway south of the defendant’s wall, and that ' there is not sufficient width of passage between the warehouse lot and such wall to enable teams and wagons to pass when they meet there. It is contended on the part of the plaintiff that those are facilities within the requirements necessary to the way, which he is entitled to have, and which are denied to him by the defendant’s structure in question.
Prior to the time of putting the cellar there, the open space between Briggs’ north hue and the warehouse lot east of . the warehouse and to the highway was forty-eight feet in width. And directly north of the warehouse, and fifteen ' feet from the lot on which it stands, was a coal shed, constructed by the plaintiff in 1876 or 1877. And teams usually came to the warehouse upon the graveled way, known as the fifteen feet strip, and after unloading passed on a little west and turned and went out north of such shed. And since the defendant’s cellar was dug, they have usually turned around and passed out north of the cellar to the highway. The space between the cellar wall and the north line of the Briggs’ land is thirteen feet. And that space is the right of way from the highway to the lot conveyed by Briggs to Aldrich, which was afterwards conveyed to the plaintiff.
In May, 1881, the plaintiff connected with the north side of his warehouse a covered shed, extending six feet and eight inches north of the north fine of the warehouse lot and 10 8-12 feet from the building, to cover teams and loaded wagons while discharging their loads into the warehouse.
This shed, and the coal shed opposite, embarrassed turning around at that point and going out on the way to the highway. This was the situation when the defendant proceeded to stake out and dig his cellar. There was plenty of room to turn west of this projecting shed upon the storehouse lot and go around the place where the coal shed was, or to get back to the 8$ feet space between the two sheds and pass through there to the highway, but they usually *128 went out north of the coal shed, and after it was removed, north of the place where it had been located. The defendant’s cellar and its walls have not essentially interrupted the use of the way, as it was used before this structure was made there by the defendant, because teams can enter upon the graveled path from the highway, and turn and pass out north of the cellar, although the space is somewhat reduced. But this north opening is upon Briggs’ land, and the right of way there is solely for the benefit and enjoyment of the Aldrich lot, and is not appurtenant to the warehouse lot. And the question is whether the plaintiff is, by the act, of the defendant, deprived of the enjoyment of the way to which he is entitled as appurtenant to the. latter. The trial court has found that the fifteen feet strip is sufficient for the plaintiff’s purposes for teams to come and go to and from his warehouses, and all that was contemplated by Jonathan Briggs or his grantees.
The plaintiff has taken exception to this finding, and contends that it is not supported by the evidence. It appears that at times several, or quite a large number of teams and wagons loaded with producé, etc., arrive and are there at the same time, and some are waiting to approach the warehouse to discharge their loads while others are being unloaded. The warehouse being eighty feet from the highway, extends in length ninety feet further west. Convenience requires sufficient room for the unloaded wagons to pass the loaded ones waiting to approach or on the way to the warehouse.
This can be done in fifteen feet by wagons ordinarily rigged, but there is evidence tending to prove that wagons come there loaded with apples in barrels, upon racks of such width that to pass each other would require a way at least twenty feet wide, and more than fifteen feet for one of them to pass a wagon ordinarily rigged and loaded.
These extreme widths of vehicle are exceptional, and it cannot as matter of law be said that the passage of them abreast came within the contemplation of the grant of the way, or that the width of it at all points for such purpose was actually or reasonably necessary to the enjoyment' of the way in view at the time it was made. Necessarily incident to the right of way for ingress and egress, are the means to turn around to go out after having gone to the warehouses. But this did not necessarily require sufficient width of way its whole length to turn about with team and wagon, nor the most convenient means of doing so at any place.
The evidence tends to prove that a little west of the north door of the warehouse, on the storehouse lot, there was adequate room to turn and get back on to the gravel *129 way. That lot belonged to Jonathan Briggs until his conveyance of it to the plaintiff in 1879. And there is evidence to the effect that it was used as the place to turn before and since such conveyance. This storehouse lot for the distance of ninety feet, west of the north door of the warehouse is north of and adjoins the warehouse lot, and that distance was subjected by the grant to a right of way as appurtenant to the last named lot. That right was merged in the conveyance of the land to the plaintiff. In view of the opportunity existing there at the time of the conveyance of 1874, and the use made of it to turn the teams and wagons to get back to the highway, the inference is permitted that the plaintiff had the facilities for that purpose reasonably necessary for the enjoyment in that respect of the right of way.
And as to that portion of the way east of the warehouse and south of the cellar, the finding of the trial court last referred to was permitted and supported by the evidence. It was sufficient to justify the conclusion, that for the ordinary purposes of the passage of teams and wagons required by the business there, the width was adequate. And there is evidence which the trial court adopted as proving the fact that before, and about the time that the defendant was proceeding to stake out the boundary lines for the cellar and foundations of the building to be erected thereon, the plaintiff, being advised thereof, stated in the presence of the defendant that he had purchased the fifteen feet strip before mentioned so that he might own his own right of way and travel upon it.
And the trial court also found that when the .cellar was being dug, and the cellar walls being built, the plaintiff was present at various times and made no objections and no claim that they infringed his right of way, and made no claim to that effect until two weeks after the walls were finished. These findings are supported by the evidence, although it is somewhat in conflict in that respect.
These facts tend in some degree to show the understanding the plaintiff then had of the extent of his right of way taken by the grant. And tends to the corroboration of the other evidence in support of the conclusion of the court as to the width of the way which was within the contemplation of the parties to it and requisite at that place for such purpose. The fact is, that instead of fifteen feet, the width between the cellar wall and the north line of the warehouse lot is seventeen feet.
And the store is far enough from the street to permit teams to turn into the way from the north on a curve if necessary to do so.
*130 The facts found by the trial court have the support of the evidence, and they required the conclusion of law that the plaintiff was not entitled to recover-for any of the relief demanded in his complaint. So it does not become important, to consider the exception to the further conclusion of the trial court that the plaintiff was estopped from maintaining the action. And none of the exceptions seem to have been well taken.
The judgment should be affirmed.
Smith, P. J., Barker and Haight, JJ., concur.